IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**ORIGINAL CREATIONS, INC.,** )
)
    Plaintiff, )
)
  v. )
) No. 11 C 3453
**READY AMERICA, INC., TRADEMARK** )
**GLOBAL, AND LIFE+GEAR, INC.,** )
)
    Defendants. )
)

## MEMORANDUM OPINION AND ORDER

Plaintiff Original Creations, Inc. ("OCI") sued Life+Gear, Inc.[1] ("Life+Gear") alleging a claim of patent infringement under Title 35 of the United States Code. Specifically, OCI contends that Life+Gear commits infringement of its patent pursuant to 35 U.S.C. § 271(a)-(c). Life+Gear seeks to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. (12)(b)(3) for improper venue. For the reasons discussed below, Life+Gear's motion to dismiss is denied.

### I. Personal Jurisdiction

Federal Circuit law governs the question of whether I can exercise personal jurisdiction over Life+Gear with respect to

---

[1] Two other defendants named in the caption, Ready America, Inc. and Trademark Global, have been dismissed from the case.

OCI's patent infringement claim. *See Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003); *see also TechnoLines, LP v. GST AutoLeather, Inc.*, — F.Supp.2d —, 2011 WL 2647996, at *2, 2011 U.S. Dist. LEXIS 71032, at *6 (N.D.Ill. 2011). However, where the Federal Circuit has not addressed a specific issue regarding personal jurisdiction in Illinois, I look to Seventh Circuit law as persuasive authority.

As plaintiff, OCI bears the burden of making a *prima facie* showing that defendant Life+Gear is subject to personal jurisdiction. *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1328-29 (Fed. Cir. 2008). Accordingly, I accept uncontroverted allegations in OCI's pleadings as true and resolve factual conflicts in the affidavits or exhibits in OCI's favor. *Id.* at 1329 (citing *Electronics*, 340 F.3d at 1349 (internal citations omitted)).

OCI is an Illinois corporation with its principal place of business in Illinois. OCI owns United States Reissued Patent No. RE41,060, entitled "Multi-functional Charger with Power Generating and Illumination Function" (the "'060 Reissued Patent"). Life+Gear is a California business, incorporated in Delaware and with its principal place of business in California.[2] According to the affidavit of Life+Gear's CEO, Nicholas Connor,

---

[2] OCI incorrectly identified Life+Gear as a "California Corporation" in its complaint.

2

defendant has no offices in Illinois, is not licensed to do business in Illinois, has no employees or agents in Illinois, has no stores in Illinois, and owns no property in Illinois.[3] Life+Gear markets and sells a number of products that OCI alleges infringe on its '060 Reissued Patent.

Life+Gear insists that its contacts with Illinois are insufficient for this court to exercise personal jurisdiction. Life+Gear asserts, and OCI agrees, that the "continuous and systematic" contacts required for an exercise of general jurisdiction are lacking in this case. *See Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). However, OCI maintains that I can properly assert specific jurisdiction.

This court may exercise personal jurisdiction over Life+Gear if two requirements are satisfied: (1) service of process conforms with Illinois' "long-arm" statute; and, (2) assertion of jurisdiction comports with due process. *See Patent Rights Protection Group, LLC v. Video Gaming Technologies, Inc.*, 603 F.3d 1364, 1368 (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998) and

---

[3] To the extent that OCI does not contest the assertions made by Life+Gear's CEO in his affidavit, I take them to be true.

*Avocent*, 552 F.3d at 1329 (citations omitted)); *see also NeoMedia Technologies, Inc. v. AirClic, Inc.*, No. 04 C 566, 2004 WL 848181, at *2, 2004 U.S. Dist. LEXIS 6634, at *5 (N.D.Ill. 2004).

The Illinois long-arm statute, 735 ILCS 5/2-209(c), authorizes an exercise of personal jurisdiction to the extent consistent with federal due process, and, therefore, the inquiry collapses into one step. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008)); *see also TechnoLines* at *3 (citing *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1580 (Fed. Cir. 1994). The issue becomes, then, whether Life+Gear has "sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotations omitted)); *see also Electronics*, 340 F.3d at 1350.

The Federal Circuit has held that an assertion of specific jurisdiction in a patent case will comport with due process if "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent*, 552 F.3d at 1332 (quoting

4

*Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006), internal quotations and citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (describing the factors listed in *Avocent* and *Breckenridge*, *supra*). The first two requirements both touch upon the issue of "minimum contacts," and I will look at these prongs of the Federal Circuit's test first.

In a patent infringement case, the requirement that the claim "arise out of" or "relate to" a defendant's activities is satisfied where the plaintiff asserts a claim that the defendant makes, uses, sells, offers to sell, or imports allegedly infringing products in the forum. *Avocent*, 552 F.3d at 1332. "In such litigation, the claim both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention." *Id.* Because OCI alleges that Life+Gear sells and offers to sell allegedly infringing products in Illinois, my inquiry is essentially limited to whether or not Life+Gear "purposefully directed its activities at residents" of Illinois. *Id.*

OCI contends that Life+Gear has had various contacts with Illinois, such that exercising specific personal jurisdiction over defendant would be proper. In particular, OCI alleges that (a) Life+Gear maintains an "interactive" website through which

5

Illinois residents can purchase the allegedly infringing products, and (b) Life+Gear causes its allegedly infringing products to be sold in Illinois through two distributors, namely Meijer and West Marine.

A. Website

Life+Gear operates a website that Illinois residents can access and through which Illinois residents can purchase the allegedly infringing products. OCI has submitted images of the Life+Gear website featuring the allegedly infringing products and an "Order" button for each product, claiming, apparently, that the ability of an Illinois resident to order an allegedly infringing product from Life+Gear's website renders that website "interactive." Life+Gear contends that it does not target the forum through its website, and that, therefore, the website cannot be a basis for personal jurisdiction. Life+Gear further argues that sales only occur through a Yahoo! Store, seeming to suggest that its own website is therefore "passive."[4] As OCI's submissions show, however, it is Life+Gear that responds to and generates receipts for orders placed through its website. The

---

[4] It is far from apparent that the "choice of law and venue provision" quoted by Life+Gear is at all applicable to this case. The provision would seem to bind Life+Gear and Yahoo!, but Life+Gear does not articulate a clear reason why the provision should be read to also bind customers purchasing items from the Life+Gear website or a patentee.

distinction between Life+Gear and the Yahoo! Store, therefore, seems to be one without a difference, since sales are initiated through the Life+Gear website and processed by Life+Gear.

In *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, the Federal Circuit addressed the issue of personal jurisdiction based on a defendant's presence on the Internet. 395 F.3d 1275 (Fed. Cir. 2005). The case presented the issue of specific personal jurisdiction under the District of Columbia's long-arm statute. Defendants maintained a website where forum residents could purchase allegedly infringing product and design personalized products. *Id.* at 1278. As in the present case, the plaintiffs in *Trintec* made no showing as to the amount of sales generated from forum residents via the website or as to the frequency with which the "interactive" features of the website were used. *Id.* at 1281. The website also advertised products and services to forum residents who visited the website. *Id.* at 1278.

The Federal Circuit, looking to local circuit law for guidance, ultimately declined to find that an exercise of jurisdiction would be proper based on the inconclusive submissions of the parties. In its opinion, which ultimately remanded the case back to the district court, the Federal Circuit noted that the problem with relying on the defendant's website as a basis for jurisdiction was that it was "not directed at

7

customers in the [forum] but instead is available to all customers throughout the country who have access to the Internet." *Id.* at 1281.

*Trintec* is instructive, but not conclusive. However, the case indicates the Federal Circuit will not find that mere allegations of potential, but as-yet-unquantified, sales to forum residents via a defendant's website are sufficient to support an exercise of personal jurisdiction. Looking to Seventh Circuit law, which is both more developed and more restrictive on the issue of websites and personal jurisdiction, it is clear that Internet sales, without something more, are not enough.[5]

Two recent Seventh Circuit cases are particularly informative. In the most recent, the defendant operated a free Internet-based matchmaking service with 20 users listing Illinois addresses. *be2 LLC v. Ivanov*, 642 F.3d 555, 556 (7th Cir. 2011). In refusing to find the Internet contacts enough to support personal jurisdiction, the Seventh Circuit echoes the Federal

---

[5] In turning to consider Seventh Circuit law, I would note that the Federal Circuit, unlike the Seventh Circuit, has not explicitly rejected the *Zippo* test, which looks at a website's level of interaction with the forum to determine if jurisdiction is appropriate. *See Trintec* 395 F.3d at 1281 (listing the *Zippo* test as one possible approach to cases involving the issue of whether a website can support an exercise of personal jurisdiction); *see also Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997). Regardless of whether the Federal Circuit ever adopts or rejects the *Zippo* test, the Seventh Circuit is clearly correct in finding that the *Zippo* test cannot substitute for the traditional minimum-contacts, due process analysis.

Circuit: "Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market." 642 F.3d at 558-59. The Seventh Circuit found that there was no evidence that the defendant had targeted or interacted with residents of Illinois, even those who were members of the website in question.

The Seventh Circuit also dealt with internet sales to Illinois residents in *Illinois v. Hemi Group LLC.*, 622 F.3d 754 (7th Cir. 2010). In that case the State of Illinois sued an out-of-state cigarette distributor who had sold cigarettes via one of its websites to a "special senior agent of the Illinois Department of Revenue." *Id.* at 755. The only specific Illinois customer plaintiff identified was the agent, and he had purchased a significant number of cigarettes on a number of occasions. *Id.* Still, the Seventh Circuit found an exercise of personal jurisdiction was justified. Aside from the volume of the sales, the court relied on the fact that defendant's website excluded New York residents from purchasing cigarettes through its website. The Seventh Circuit found that the exclusion of New York residents was equivalent to defendant stating that it "wanted to do business with Illinois residents." *Id.* at 758.

In the case before me, OCI has documented one sale made to an Illinois resident, plaintiff himself, via the Life+Gear website. OCI has not alleged or claimed that Life+Gear

9

advertises to or targets Illinois residents on its website in any way. Nor has OCI alleged or claimed that Life+Gear "holds itself out as open to do business with" Illinois residents. *Hemi Group*, 622 F.3d at 758. The lone documented sale to an Illinois resident and the fact that Life+Gear fulfilled that order, intentionally sending the allegedly infringing product into the state, may have been "purposeful." *See Id.* at 758 (refusing to find that the sales made to the special agent were "unitlateral" and pointing out that defendant's own actions "led up to and followed the sales"). That sale alone is an insufficient bases upon which to find personal jurisdiction.

B.  Illinois Distributors

OCI also argues that personal jurisdiction is proper because of sales made at two Illinois distribution sites, Meijer and West Marine.[6] OCI puts forth a "stream of commerce" theory, arguing that because Life+Gear sold the allegedly infringing products to

---

[6] There is some disagreement as to whether West Marine in fact sells the allegedly infringing products in Illinois. OCI has submitted a receipt and an affidavit in support of its allegation that it was able to purchase one of the allegedly infringing products at a West Marine store in Illinois. Defendant Life+Gear claims that it could not find its products for sale on the West Marine website. However, Life+Gear does not disclaim what plaintiff alleges: Namely, that Life+Gear products were available for sale at a West Marine store in Illinois. A product available at a physical location may be unavailable for on-line purchase. I therefore take as true plaintiff OCI's allegation that the product was purchased at a West Marine store in Illinois.

two distributors with multiple stores in Illinois, it purposely directed its activities to residents of Illinois. I agree.

As Life+Gear points out, the "stream of commerce" theory has been addressed recently by the Supreme Court. *See J. McIntyre Machinery, Ldt. v. Nicastro*, — U.S. —, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011) (reversing assertion of personal jurisdiction over foreign defendant who had utilized a U.S. distributor to sell products in U.S. but not specifically in the forum state); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. —, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) (reversing assertion of general jurisdiction over foreign subsidiaries of U.S. company where only contacts with forum were attenuated and not related to activities causing injury). However, I find that these cases do not overturn the Court's earlier articulations of the stream of commerce theory, nor do these cases disturb Federal Circuit precedent warranting an exercise of personal jurisdiction over Life+Gear in this case.

In *Nicastro*, the foreign defendant's contacts with the forum state were limited to the existence of, at most, four machines in the forum state, including the one causing the injury giving rise to the lawsuit. The plaintiffs in the lawsuit alleged a stream of commerce theory for why defendant should be subject to personal jurisdiction in the forum. In a plurality opinion, four Justices addressed the stream of commerce theory, which has

caused some confusion among the lower courts ever since *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). *See Nicastro*, 131 S.Ct. at 2785.

The opinion first dispels the notion that merely placing goods into the stream of commerce always indicates purposeful availment. *Nicastro*, 131 S.Ct. at 2788. Instead, the justices reiterate the "unexceptional proposition" that placing goods into the stream of commerce "may in an appropriate case [render a defendant] subject to jurisdiction without entering the forum ... as where manufacturers or distributors 'seek to serve' a given State's market." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).[7]

I cannot agree with Life+Gear's characterization of itself as being comparable to the defendant in *Nicastro*. The defendant in *Nicastro* engaged a distributor in the U.S. to market its products throughout the country. The Court found that such general marketing efforts fell far short of "purposefully

---

[7] I note that *Nicastro*, itself a plurality opinion, does not clarify whether the Court has adopted Justice Brennan's lenient, foreseeability-based approach or Justice O'Connor's more rigorous standard, requiring something in addition to placing a product into the stream of commerce. Neither has the Federal Circuit adopted one approach over the other. *See Avocent* 552 F.3d at 1331. The facts in this case, though, satisfy either standard.

12

directing" activities at the forum state. *Nicastro*, 131 S.Ct. at 2790. The Court also noted that the machine in question, which was manufactured by defendants, "ended up" in the forum state through no direct action of defendants, even if the machine's presence in the forum could technically be characterized as "foreseeable." *Id.*

In contrast, Life+Gear has sold its products to two distributors that market to Illinois residents. In other words, Life+Gear has taken advantage of the clearly defined distribution network offered by Meijer and West Marine, which includes at least 21 stores in Illinois.[8] Further, OCI has submitted exhibits and affidavits attesting to two separate sales of the allegedly infringing products and stocking of the allegedly infringing products at a third store. The distribution network Life+Gear has utilized within Illinois is far afield from Justice Kennedy's example of the owner of the small farm who has no control over distribution channels for her crops. *Id.*

That the *Nicastro* Court does not discard the stream of commerce theory would also seem to suggest that the Federal Circuit case law utilizing this approach has been left

---

[8] I agree with OCI's argument that the fact that Meijer and West Marine are incorporated and headquartered in other forums is irrelevant in this case. OCI has not alleged that Life+Gear conducted business with Illinois corporations. Instead, OCI contends that Life+Gear's sales to Meijer and West Marine, to corporations with various stores located in Illinois, indicate that Life+Gear sought to serve the Illinois market.

undisturbed. In fact, in applying the stream of commerce theory, the Federal Circuit has clearly distinguished between those defendants who control the distribution channel and those who do not. *See NeoMedia* at *7. In a case involving the manufacturer and distributor of a fan allegedly infringing on patentee's rights, the Federal Circuit applied the stream of commerce theory and found that jurisdiction was proper where defendants caused the allegedly infringing fan to be sold at the local outlet of a chain store. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). In that case, the plaintiffs showed through affidavits that a private investigator purchased the allegedly infringing fan at a chain store with about six outlets in the forum state and that the fans were available for purchase at the other outlets as well. *Id.* at 1560-61. The *Beverly Hills Fan* court found that the defendants "placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court [in the forum]." *Id.* at 1566. The court reasoned that the "presence of an established distribution channel" indicated an "expectation that [defendant's products] will be purchased by consumers in the forum state." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

In contrast, the Federal Circuit has found that where a defendant does not control the "distribution channel," the stream of commerce theory is inapplicable. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998). In that case, the defendant patent holder entered into licensing agreements with companies that manufactured or marketed certain athletic shoes. *Id.* at 1357. The Federal Circuit found that the defendant had no control over its licensees or their products, and therefore personal jurisdiction could not be premised on the stream of commerce theory.

The case in front of me is akin to *Beverly Hills Fan*. Like the defendants in *Beverly Hills Fan*, Life+Gear has established distribution channels in Illinois such that it "knew the likely destination" of its products and established "connections with the forum state." 21 F.3d at 1566. I find, therefore, that Life+Gear has "purposefully directed its activities" at residents of Illinois and that the claim here "arises out of or relates to those activities," and I can exercise jurisdiction over Life+Gear if the final jurisdictional requirement, that jurisdiction be "reasonable and fair," is also met. *See Avocent*, 552 F.3d at 1332; *Burger King*, 471 U.S. at 472-77.

After a plaintiff has shown sufficient minimum contacts exist to support jurisdiction, "it becomes defendants' burden to

present a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Electronics*, 340 F.3d at 1351-52 (quoting *Burger King*, 471 U.S. at 477). Factors that are relevant to the reasonableness inquiry include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Patent Rights*, 603 F.3d at 1369 (quoting *Burger King*, 471 U.S. at 476-77). The Federal Circuit has explained that finding jurisdiction unreasonable is "limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id.* (quoting *Beverly Hills Fan*, 21 F.3d at 1568 (internal quotation marks omitted)).

Life+Gear has not met its burden, and jurisdiction is proper and reasonable. The Federal Circuit has found that a forum state's interests are not insignificant and include "providing a convenient forum" for its citizens and "cooperating with other states to provide a forum for efficiently litigating a

16

plaintiff's cause of action," which includes patent litigation. *Id.* at 1370-1371 (citations omitted). The burdens on Life+Gear are not enough to overcome the interests of the state and OCI. Though travel is a burden, it is not generally a reason to find jurisdiction unreasonable. *Beverly Hills Fan*, 21 F.3d at 1569.

## II. Venue

Turning to Life+Gear's venue challenge, I am unpersuaded that venue in this district would be improper. As with the question of personal jurisdiction, Federal Circuit precedent binds my decision on the issue of venue. Venue, like personal jurisdiction, is "intimately involved with the substance of the patent laws." *Electronics*, 340 F.3d at 1348 (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) for the proposition that Federal Circuit law applies to the issue of personal jurisdiction). Whether venue is proper requires interpretation of 28 U.S.C. § 1400(b), which is specifically a patent venue statute. The Federal Circuit's interpretation of § 1400(b), then, is controlling.

The 1988 Amendment to 28 U.S.C. § 1391(c) expanded the definition of "resides in" for corporate defendants to include "any judicial district in which [a corporation] is subject to personal jurisdiction." 28 U.S.C. § 1391(c). The Federal Circuit, thereafter, read the expanded definition of "resides"

17

into its interpretation of § 1400(b). *VE Holdign Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed. Cir. 1990), *cert. denied* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991). Therefore, as OCI correctly states, "the venue point is a non-issue" because "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec*, 395 F.3d at 1280; *see also Braden Shielding Systems, a Unit of Jason Inc. v. Shielding Dynamics of Texas*, 812 F.Supp. 819, 821 (N.D.Ill. 1992).

III.

For the reasons discussed above, defendant Life+Gear's motion to dismiss pursuant to Rule 12(b)(2) and (3) is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 5, 2011